MCKEIG, Justice.
*38 This appeal is from an arbitration award reinstating police officer Nathan Kinsey after respondent City of Richfield (the City) discharged him for failing to report his use of force and violating other policies. Kinsey, through his union, appellant Law Enforcement Labor Services, Inc. (the Union), filed a grievance with the City. The dispute was arbitrated, and the arbitrator found that, because Kinsey did not use excessive force and his decision not to report the use of force was a "lapse in judgment," the City did not have just cause to discharge Kinsey. The arbitrator ordered reinstatement, with back pay, but with a three-shift unpaid suspension. The district court denied the City's motion to vacate the award. The court of appeals reversed. The court of appeals held that enforcement of the arbitration award would violate well-defined and dominant public policies against excessive force, and interfere with policies that favor transparency and proper reporting of the use of force and require police departments to *39 hold police officers accountable for their conduct. Because enforcing the arbitration award does not violate a well-defined and dominant public policy, we reverse.
FACTS
The City and the Union are parties to a collective bargaining agreement that includes, as required by state law, a compulsory binding arbitration provision. Minn. Stat. § 179A.20, subd. 4 (2018). Here, the collective bargaining agreement permits imposition of discipline on an employee, including discharge, only for "just cause," a term not defined in the agreement.
Kinsey, a Richfield police officer since February 2006, was assigned to the K-9 unit at the time of his discharge. The arbitrator found he was highly respected, and his performance reviews had been generally positive. But one area in which Kinsey needed to improve was reporting on his use of force. He had received 80 hours of remedial training on the use of force and report writing. He received an official oral reprimand in 2013 for failing to justify the use of force in a report, and since 2011, he has been counseled on reporting the use of force four times.
This case arises out of a traffic stop on October 3, 2015, at about 6:30 p.m., in Richfield. Kinsey and a colleague separately responded to a report that "more than 50 Somalis" were hanging out in a park and "driving crazy on the roads." As Kinsey approached the park, the truck in front of him was forced to brake sharply to avoid two cars that were driving closely together. Kinsey pulled over the two cars, and the other officer went to investigate the situation in the park.
Driver 1 (D1) was a 19-year-old Somali man and Driver 2 (D2) was a 15-year-old Somali boy. Kinsey gave D1 a careless driving citation and told him to leave the area. Over the course of several interactions, D1 expressed concern about having a citation on his record and despite Kinsey's earlier direction, failed to leave the scene. D2, whose driving permit had been revoked, received a citation for driving after revocation of his permit.
While Kinsey waited for D2 to call his mother to have her drive him home, D1 continued expressing concern about his citation. A 36-second video recorded by D2 showed Kinsey push D1 twice and slap him on the back of the head. The audio from Kinsey's body microphone recorded him using profanity to tell D1 and his friends to leave the area. D1 stumbled as a result of the pushes from Kinsey but did not fall to the ground. Bystanders told Kinsey that they had video of the incident.
After he issued the citations, Kinsey asked his sergeant whether a case number was needed for a careless-driving citation. The sergeant replied that he did not need a case number but should include notes. Kinsey made notes on both citations. He did not include any notes on D1's citation about his use of force, but wrote "[a]ll occupants then walked up on me later trying to cause trouble" on the citation. Kinsey also did not orally report the use of force.
The video appeared on social media, and command staff and the police chief received inquiries from the public-including Somali community groups and reporters-about the events in the video. The police did not have information to assist in responding to the inquiries because Kinsey had not reported using force. The police chief requested an investigation by the Bureau of Criminal Apprehension, and after that investigation yielded no criminal charges, the chief ordered an internal investigation. During the internal investigation, Kinsey conceded that he had considered filing a report about his use of force and knew that the Department's practice *40 was to err on the side of reporting. The internal investigation found violations of several department policies. As a result, the police chief recommended that the City discharge Kinsey, which it did, effective April 14, 2016.
The Union challenged Kinsey's discharge under the collective bargaining agreement. After a 5-day hearing, the arbitrator issued a 40-page decision, concluding: 1) given the totality of the circumstances, Kinsey did not use excessive or unreasonable force in this incident; 2) the City's policy on reporting use of force was not clear, and Kinsey was not technically required to report the type of force that he used, but he should have alerted the command staff to the incident; 3) Kinsey's actions were not motivated by racial bias; and 4) his use of profanity violated department policy but "[did] not warrant disciplinary action." The arbitrator concluded that Kinsey did not intend to deceive or conceal information from his supervisors, but that failing to report the use of force was a "lapse in judgment constituting unacceptable performance that warrants disciplinary action." Based on these conclusions, the arbitrator determined that the City did not have just cause to terminate Kinsey's employment and ordered reinstatement with back pay, minus a three-shift unpaid suspension for not properly reporting the incident.
The City moved to vacate the arbitration award on public policy grounds. The district court upheld the arbitration award because "the [C]ity[ ] failed to present any well-defined, dominant public policy that prohibits police officers who are disciplined or counseled for use of excessive force but who are then charged with excessive force, from being reinstated to the police force." The court also concluded that no public policy would be violated if Kinsey were reinstated "after being found by an arbitrator not to have used excessive force."
On appeal to the Minnesota Court of Appeals, the City argued that the arbitration award violates public policy. The court of appeals agreed and held that reinstating Kinsey would interfere with a public policy "in favor of police officers demonstrating self-regulation by being transparent and properly reporting their use of force." City of Richfield v. Law Enf't Labor Servs., Inc. , 910 N.W.2d 465, 477 (Minn. App. 2018). The court of appeals also held that "the arbitration award interferes with the public policy against police officers using excessive force" because cities and police departments need to be able to "review occasions involving the use of force" to effectively prevent such incidents. Id. The Union appealed, and we granted further review.
ANALYSIS
The City seeks to vacate the arbitration award as a violation of public policy. Generally, arbitrators serve as the "final judge of both law and fact, including the interpretation of the terms of any contract." State Auditor v. Minn. Ass'n of Prof'l Emps. , 504 N.W.2d 751, 754 (Minn. 1993) (quoting Cournoyer v. Am. Television & Radio Co. , 249 Minn. 577, 83 N.W.2d 409, 411 (1957) ). The public-policy exception is a narrow exception that was created by courts as an extension of the contract doctrine allowing courts to abrogate private contracts that are contrary to public policy. United Paperworkers Int'l Union v. Misco, Inc. , 484 U.S. 29, 42-43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We have noted that a public-policy exception may, in limited circumstances, provide a basis to vacate an arbitration award that violates a well-defined and dominant public policy. State Auditor , 504 N.W.2d at 756 (citing W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers , 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) ). In evaluating whether *41 a public policy is well-defined and dominant, a court must look to "existing laws and legal precedents" and cannot rely on " 'general considerations of supposed public interests' ... to overturn the arbitrator's award." Id . (quoting United Paperworkers , 484 U.S. at 44, 108 S.Ct. 364 ).
The question of public policy is one for the courts, and "an appellate court need not give deference to a trial court's decision on a legal issue." Frost-Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n , 358 N.W.2d 639, 642 (Minn. 1984). Although we review arbitration awards de novo, judicial review of arbitration decisions is generally extremely limited. See Minn. Stat. § 572B.23(a) (2018) (laying out the narrow rules for judicial vacation of an arbitration award). The burden lies with the party seeking to vacate the arbitration award to demonstrate that the award should be vacated. See Hilltop Constr., Inc. v. Lou Park Apts. , 324 N.W.2d 236, 239 (Minn. 1982). When a court is asked to vacate an arbitration award, "[e]very reasonable presumption must be exercised in favor of the finality and validity of the arbitration award." State Auditor , 504 N.W.2d at 754.
We have considered a request to vacate an arbitration award under the public-policy exception only once, in State Auditor , and we declined to vacate the arbitration award under the exception in that case.[1] 504 N.W.2d at 758. In State Auditor , the public employer discharged an employee for submitting fraudulent expense reports and failing to fully disclose the extent of his misconduct. Id. at 753. The arbitrator ordered the employee reinstated without back pay because there was not just cause to discharge the employee and "his continued employment would cause no significant adverse effect." Id. at 754. We declined to set aside the arbitrator's award because "[g]iven the arbitrator's findings, which we are bound to accept, we [could not] conclude that the arbitrator's award reinstating [the employee] violated any well-defined and dominant public policy." Id. at 758.
"A court may set aside an arbitration award only if (1) the collective bargaining agreement contains terms which violate public policy, or (2) the arbitration award creates an explicit conflict with other 'laws and legal precedents.' " Id. at 756 (quoting United Paperworkers , 484 U.S. at 43, 108 S.Ct. 364 ). Although the public employee's conduct may have violated a well-defined and dominant public policy, it is another matter to "conclude that the arbitrator's award reinstating [the employee] violates" a well-defined and dominant public policy. Id. at 757. In State Auditor , we stressed that a court must focus the analysis on the effect of enforcement of the arbitrator's award. Id.
The City argues that the court of appeals correctly held that enforcing this arbitration award violates "public polic[ies] in favor of police officers demonstrating self-regulation by being transparent and properly reporting their use of force" and "against police officers using excessive force" and would interfere with the City's "legal obligation" to enforce conduct standards for its police officers. City of Richfield , 910 N.W.2d at 477. The Union argues that the court of appeals focused unduly on Kinsey's conduct rather than on enforcement of the arbitration award, and reinstatement of Kinsey does not violate any public policy. We agree with the Union.
Assuming without deciding that a public-policy exception permits courts to vacate arbitration awards, the facts here do not support applying the exception. It is difficult to conclude that the arbitration *42 award violates public policy given the finding that excessive force was not used. Kinsey's failure to report does not provide a basis for applying the public-policy exception because the arbitrator found that, even though Kinsey should have reported the incident, the City's policy was not clear on that question. The factual findings of the arbitrator, findings that we give deference to, do not support overturning the arbitration award on the basis of a rarely used public-policy exception.
As to the question whether this award undermines the police department's ability to enforce its policies, the arbitrator did impose discipline on Kinsey, a three-shift suspension, for his "unacceptable performance" in failing to properly report the incident. Here, like in State Auditor , the terms of the collective bargaining agreement left it to the arbitrator to define "just cause" for termination and to determine the appropriate discipline for any violations of department policies. "[E]ven our strong disagreement with [an arbitrator's] result does not provide sufficient grounds for vacating the arbitrator's award." State Auditor , 504 N.W.2d at 758.
No doubt many observers would find Kinsey's actions disturbing. But state statute requires arbitration, and the City's contract with the Union gives the arbitrator the authority to decide what constitutes just cause for termination. Applying the statute and the language in the contract, and deferring to the facts as found by the arbitrator, we reverse the decision of the court of appeals.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed.

In fact, we declined to express an opinion on whether the exception could be applied to another set of facts. State Auditor , 504 N.W.2d at 758 n.9.